

# SUPREME COURT OF MISSOURI
## en banc

KAREN CARPENTER,             )      *Opinion issued December 20, 2016*
                                 )

           Appellant,       )
                                 )

v.                             )      No. SC95482
                                 )

STATE BOARD OF NURSING,     )
                                 )

           Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable David Dowd, Judge

Karen Carpenter sought judicial review of the State Board of Nursing's (Board) disciplinary order, which imposed discipline on her nursing license, including a three-year probationary period with numerous conditions and restrictions. The circuit court found that the Board's disciplinary order was arbitrary, unreasonable, and excessive. The court reduced the probationary period to one year and eliminated almost all conditions and restrictions originally imposed by the Board. Ms. Carpenter then sought attorney's fees under section 536.087.1,[1] which allows a "prevailing party" in an agency proceeding or civil action therefrom to collect attorney's fees. The circuit court rejected Ms. Carpenter's

---

[1] Unless otherwise noted, all statutory citations are to RSMo 2000.

request, finding that, because Ms. Carpenter was still subject to discipline, she was not a "prevailing party."

Ms. Carpenter appeals, arguing that the circuit court erred in finding that she was not a "prevailing party" based on the broad definition of "prevails" found in section 536.085 and Missouri and federal court interpretations of the term. This Court agrees. While the circuit court found that Ms. Carpenter's actions warranted some discipline, it also found that, as requested by Ms. Carpenter in her petition, the amount of discipline imposed was excessive, unreasonable, arbitrary, and capricious. Section 536.085(3) defines "prevails" broadly as "obtains a favorable order, decision, judgment, or dismissal in a civil action or agency proceeding[.]" The circuit court applied a much narrower definition and found that Ms. Carpenter did not prevail on the "significant issue" of whether her actions warranted discipline. Under the broad definition of "prevails" found in the statute, however, Ms. Carpenter "prevailed" when she successfully petitioned the circuit court to reduce the probationary period on her license from three years to one and to eliminate almost all of the conditions and restrictions imposed by the Board.

Nevertheless, the circuit court did not err in overruling Ms. Carpenter's motion for attorney's fees. Even though the Board acted in a dual capacity as both an advocate and an adjudicator at the disciplinary hearing, the attorney for the Board never took a position as to what discipline the Board should impose on Ms. Carpenter's license. Rather, it was the Board, acting in its adjudicatory role, that decided to impose the probation conditions with which the circuit court later found fault. Accordingly, Ms. Carpenter is not entitled

to attorney's fees under section 536.087.1, and the circuit court's judgment denying her fee application is affirmed.

## Factual and Procedural Background

Karen Carpenter worked as a nurse at Fulton State Hospital until April 25, 2008, when she failed a drug screening and tested positive for "pain killers" for which she did not have a prescription. The hospital reported the incident to the Board the same day. On May 5, 2011, the Board filed a complaint with the Administrative Hearing Commission (AHC), seeking a finding that cause existed to discipline Ms. Carpenter's license as a registered nurse. On September 13, 2012, the AHC issued its decision, finding that Ms. Carpenter violated the Nursing Practice Act, chapter 335 RSMo, by unlawfully possessing and testing positive for controlled substances.

In light of the findings by the AHC, the Board convened a hearing to determine what discipline should be imposed on Ms. Carpenter's license. On December 17, 2012, the Board entered its disciplinary order that included a three-year probationary period. The disciplinary order included seven sections, with more than 30 restrictions and conditions, including:

- Ms. Carpenter shall provide a copy of this Board Order to any current employer and to any potential employer. Ms. Carpenter shall cause an evaluation from each and every employer to be completed for the Board at least quarterly.
- Ms. Carpenter may not serve on the administrative staff, as a member of the faculty or as a preceptor at any school of professional or practical nursing.
- Ms. Carpenter shall only work as a nurse where there is on-site supervision. Ms. Carpenter shall not work in a home health care, hospice, or durable medical equipment.

3

- Ms. Carpenter shall not administer, possess, dispense or otherwise have access to controlled substances for the first twelve months of probation.
- Ms. Carpenter shall, within six weeks from the effective date of this agreement, undergo a thorough evaluation for chemical dependency performed by a licensed chemical dependency professional.
- Ms. Carpenter shall contract with the Board-approved third party administrative (TPA) to schedule random witnessed screening for alcohol and other drugs of abuse. The frequency and method of such screenings shall be at the Board's discretion. The screenings may be conducted on urine, breath, blood or hair. The random screens shall be at the expense of Ms. Carpenter.
- Ms. Carpenter shall call the TPA each day of the week including weekends, holidays, and each day that Ms. Carpenter is on vacation, between the hours of 5:00 a.m. and 4:00 p.m. C.S.T. Failure to call the TPA every day shall constitute a violation of the terms of discipline.
- During the disciplinary period, Ms. Carpenter shall abstain completely from the use or consumption of alcohol in any form. The presence of any alcohol whatsoever in any biological sample obtained from Ms. Carpenter, regardless of the source, shall constitute a violation.

On January 15, 2013, Ms. Carpenter, through counsel, filed a petition for judicial review in the circuit court of the City of St. Louis. The petition alleged that (1) the AHC did not have authority to issue its decision because the Board's complaint was not timely filed and (2) the terms and conditions specified in the Board's disciplinary order were unreasonable, arbitrary, capricious, and an abuse of the Board's discretion. Ms. Carpenter also requested a stay while the case was being litigated. The court granted a stay, noting Ms. Carpenter's otherwise clean disciplinary record and the failure by the Board to show the risk of harm to the public if a stay was granted.

On September 26, 2014, the court issued its order reversing the Board's disciplinary order and remanding the case to the Board to reconsider discipline. The court found that "the discipline imposed against [Ms. Carpenter's] license is unreasonable under all the

4

circumstances, and an abuse of discretion. More specifically, the Court finds the Board's Discipline Order to be arbitrary and capricious."

On October 24, 2014, Ms. Carpenter filed a motion seeking attorney's fees under section 536.087.1, which allows "[a] party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state," to be awarded reasonable fees and expenses incurred by that party in the civil action or agency proceeding. Although the court, in its September 26 order, remanded the case to the Board for a reconsideration of the terms of discipline, the Board requested that the court make that determination because the Board would not meet until March 2015.

On February 20, 2015, the court issued its final judgment, incorporating its previous order and vastly reducing the number and scope of the terms and conditions of Ms. Carpenter's discipline from that imposed by the Board. The court, finding that the length and terms of the Board's disciplinary order were excessive, arbitrary, and capricious, reduced the length of probation from three years to one and eliminated the majority of the conditions and restrictions in the Board's original disciplinary order. Specifically, the revised disciplinary order contained only one section labeled "General Requirements" with only nine restrictions and conditions, including:

- Ms. Carpenter shall meet with the Board or its professional staff at such times and places as required by the Board.
- Ms. Carpenter shall not violate the Nursing Practice Act.
- Ms. Carpenter shall inform the Board within ten days of any change of home address or home telephone number.
- Ms. Carpenter shall obey all federal, state and local laws, and all rules and regulations governing the practice of nursing in this state.

5

- Ms. Carpenter shall complete the continuing education classes specified in the Board's original disciplinary order.

The court also held that Ms. Carpenter was not entitled to an award of attorney's fees because she was not a "prevailing party" for purposes of sections 536.085(3) and 536.087.1. In so ruling, the court relied heavily on *White v. Missouri Veterinary Medical Board*, 906 S.W.2d 753, 755 (Mo. App. 1995), which held that, because the appellant did not prevail on the "significant issue" below, he was not entitled to attorney's fees. The court reasoned that the "significant issue" in this case was whether Ms. Carpenter's nursing license was subject to discipline and, "[w]hile the Court has reduced the overall scope of discipline being imposed against [Ms. Carpenter's] license, the Court has ruled that discipline is warranted. [Ms. Carpenter] has not prevailed on that principal significant issue." The court, therefore, found that Ms. Carpenter was not a "prevailing party" and was not entitled to attorney's fees.

Ms. Carpenter appealed the circuit court's overruling of her motion for attorney's fees.[2] After an opinion by the court of appeals, this Court granted transfer. MO. CONST. art. V, sec. 10.

## Standard of Review

Section 536.087.7 provides the level of review this Court will use when reviewing the denial of fees:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made

---

[2] Neither Ms. Carpenter nor the Board appeals from the circuit court's judgment that the Board's discipline was unreasonable or the reduction of discipline.

6

before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or *failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.*

(Emphasis added). "Though the Court ordinarily will defer to findings of fact based on the credibility of witnesses, the Court will review *de novo* any questions of law raised by the application, including questions as to statutory interpretations." *Garland v. Ruhl*, 455 S.W.3d 442, 446 (Mo. banc 2015).

## "Prevailing Party"

Generally, "orders requiring one party to pay another party's attorney fees or other expenses . . . are not permitted unless . . . a statute authorizes the court to make such an award." *Id*. at 446. Section 536.087.1 authorizes attorney's fees to be awarded to:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

Section 536.087 is modeled after a nearly identical provision of the Equal Access to Justice Act ("EAJA") – specifically, 5 U.S.C. § 504. "[T]he intent of both [statutes] is to require agencies to carefully scrutinize agency and court proceedings and to increase the accountability of the administrative agencies." *Dishman v. Joseph*, 14 S.W.3d 709, 716 (Mo. App. 2000). The rationale of the EAJA – and by association section 536.087 – is "to encourage relatively impecunious private parties to challenge abusive or unreasonable government behavior by relieving such parties of the fear of incurring large litigation

7

expenses." *White,* 906 S.W.2d at 755 (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1314–15 (8th Cir. 1986)).

Section 536.085(3) defines "prevails" as "obtains a favorable order, decision, judgment, or dismissal in a civil action or agency proceeding[.]" In its final judgment, the circuit court held that "the discipline imposed against [Ms. Carpenter's] license is unreasonable under all the circumstances, and an abuse of discretion. More specifically, the Court finds the Board's Discipline Order to be arbitrary and capricious[.]" In so finding, the court reduced Ms. Carpenter's probation from three years to one and eliminated almost all of the conditions and restrictions originally imposed in the Board's disciplinary order. The circuit court, however, held that Ms. Carpenter was not a "prevailing party" and rejected her claim for attorney's fees.

The court relied on *White*'s use of "the significant issue" language to hold that "[t]he significant issue in this case is [Ms. Carpenter's] nursing license was subject to discipline. While the Court has reduced the overall scope of discipline being imposed against [her] license, the Court has ruled that discipline is warranted. [Ms. Carpenter] has not prevailed on that significant issue." Therefore, the court found that Ms. Carpenter was not a prevailing party.

While the circuit court relied on "the significant issue" language in *White*, that language was not intended to limit the award of attorney's fees to circumstances when a party has succeeded on *the* significant issue. Rather, *White* notes that the United States Supreme Court, in *Texas State Teachers Ass'n v. Garland Independent School District*,

489 U.S. 782 (1989), held that a party is entitled to an attorney's fee award of some kind when "the plaintiff has succeeded on '*any* significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit.'" 906 S.W.2d at 755 (quoting *Garland*, 489 U.S. at 791-92) (emphasis added). Limiting a prevailing party's recovery of attorney's fees to success on only "the" significant issue would conflict with the plain language of section 536.085 and the interpretation of "prevailing party" by Missouri and federal courts. "The touchstone of the prevailing party inquiry must be the *material alteration of the legal relationship of the parties* in a manner which Congress sought to promote in the fee statute." *White,* 906 S.W.2d at 755 (emphasis added).

Further confirmation that *White* was not requiring identification and success on a single, most significant issue in the proceeding is found in an examination of the facts and holdings of that case. In *White*, the Missouri Veterinary Medical Board (Vet Board) filed an administrative complaint with the AHC alleging multiple charges of misconduct by Mr. White, a veterinarian. *Id.* at 754. After a hearing before the AHC, the Vet Board prevailed on most, but not all, of the charges, and the Vet Board revoked Mr. White's license. *Id.* Mr. White sought attorney's fees for the fees incurred while defending against the charges that the Board did not prevail on. *Id.* The court rejected Mr. White's petition, noting first that "[t]here is no dispute that partial awards are contemplated by the EAJA and the Missouri statutes" and that "[t]here is also no dispute that a defendant who prevails in obtaining *all* relief sought in defense of a claim brought by the government may be entitled to an award for fees and expenses." *Id.* at 756. "The question is whether the

appellant, who prevailed on some allegations but ultimately lost in the underlying action, is entitled to a fee award for the issues on which he prevailed." *Id*.

In resolving that issue, the court reviewed the underlying action wherein the AHC found that Mr. White's actions constituted misconduct, gross negligence, fraud, misrepresentation, dishonesty, and incompetency, and revoked his license. *Id*. On that record, the court held that, "[a]lthough the Board was not able to prove all of the factual allegations claimed as cause for discipline," the Board proved that Mr. White's license was subject to discipline. *Id*. The court further found that "the legal relationship of the parties was altered in the manner sought by the Board and opposed by appellant. Appellant cannot be considered a 'prevailing party' for the purposes of sections 536.085(3) and 536.087.1." *Id.*

As noted previously, the circuit court's narrow interpretation of the term "prevailing party" is also contrary to the meaning of that term articulated by the United States Supreme Court in *Garland*, 489 U.S. at 791-92. Before the Supreme Court settled the split, some lower federal courts applied a "central issue" test to determine if a party had prevailed and, therefore, was entitled to attorney's fees. *Id.* at 790. The court rejected this test and held that "the search for the 'central' and 'tangential' issues in the lawsuit, or for the 'primary,' as opposed to the 'secondary,' relief sought . . . distracts the district court from the primary purpose behind [the attorney's fees statute] and is essentially unhelpful in defining the term 'prevailing party.'" *Id.* at 791. Instead, the Supreme Court held that "respect for ordinary

10

language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id*. at 792 (internal quotation omitted).

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the United States Supreme Court further clarified, in the context of interpreting a civil rights fee-shifting provision, what is necessary to qualify as a "prevailing party." The Court held:

> [T]o qualify as a prevailing party, a . . . plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at 111-12 (citations omitted).

Applying this standard to the facts of this case, after the AHC found that Ms. Carpenter's license was subject to discipline, the Board convened a hearing and imposed discipline on her license. Ms. Carpenter filed a petition for review in the circuit court challenging the terms and conditions of the Board's discipline as unreasonable, arbitrary, capricious, and an abuse of its discretion. The circuit court found that "the duration of probation and the terms of probation substantially exceed that which is necessary to protect the public," that it was "unreasonable under all circumstances, and an abuse of discretion," and "the Board's Discipline Order [is] arbitrary and capricious." Unlike in *White*, Ms. Carpenter *did* prevail on the claim in her petition that the discipline

11

imposed by the Board was unreasonable. She obtained a favorable judgment in a civil action that was a "material alteration of the legal relationship between the parties." *White*, 906 S.W.3d at 755. Ms. Carpenter, therefore, was a "prevailing party" under section 537.085(3).

**The Board's Disciplinary Order Is Not a "Position" for Purposes of Section 536.087**

Finding that Ms. Carpenter was a "prevailing party," she is entitled to attorney's fees at the circuit court level "unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust." Section 536.087.1. The circuit court never reached the "substantially justified" requirement because it incorrectly concluded that Ms. Carpenter was not a prevailing party.

The Board asserts that, even if Ms. Carpenter is found to be a prevailing party, she is not entitled to attorney's fees because the Board's disciplinary order does not constitute a "position" for purposes of section 536.087.1. More specifically, the Board contends that, although it took a "position" – that Ms. Carpenter's license was subject to discipline – before the AHC, its role changed from an advocate to an adjudicator at the disciplinary hearing, in which it entered a "decision" as to the discipline to be imposed.

Last year, this Court in *Garland*, 455 S.W.3d at 448, distinguished between an administrative agency's "position" and an administrative agency's "decision" for purposes of awarding attorney's fees pursuant to section 536.087.1. *Garland* involved an administrative child support order entered by the Family Support Division (Division) in an action between a mother and a father. *Id.* at 444. The mother sought judicial review of

12

that order, but before the matter was decided, she and the father settled on terms more favorable for her than the terms in the Division's order. *Id.* at 445. The circuit court entered an order based on the settlement terms and dismissed the petition as moot. *Id*. at 446. The mother then filed an application to have the Division pay her attorney's fees under section 536.087. *Id*. In answering the question of whether the "position" taken by the state agency was substantially justified, this Court held that:

> An administrative decision rendered in the role of adjudicator does not constitute a "position" as that term is used throughout section 536.087. . . . A *decision* by an administrative official acting as the adjudicator in a contested case is not the same as—and cannot constitute—a *position* asserted "during such agency proceeding" by an attorney representing the state agency. The Missouri Constitution protects private parties from errors by the former by guaranteeing judicial review. The purpose of section 536.087 is to protect such parties from overreaching by the latter by requiring the agency to pay the non-governmental party's attorney fees when the agency's position is not substantially justified.

*Id*. at 448. Therefore, the "[m]other's attorney fee application fails because the 'position' she challenges is not an agency 'position;' it is an agency decision. Section 536.087 applies to the former, but not the latter." *Id*.

Although the Board characterizes its role at the disciplinary hearing as solely an adjudicator, a closer examination reveals that the Board acted in a dual capacity at the disciplinary proceedings. Section 536.087.1 provides for an award of attorney's fees for the party who prevails "in an agency proceeding or civil action arising therefrom." An "agency proceeding" is "an adversary proceeding in a contested case pursuant to this

13

chapter[3] in which the state is represented by counsel." Section 536.085(1). Here, the case before the Board was styled as "State Board of Nursing vs. Karen Carpenter," and the Board was represented by counsel at the hearing. Counsel for the Board took an active role at the disciplinary hearing by presenting evidence, cross-examining witness, and making open and closing arguments to the Board. While the Board was also acting as the decision-maker, the disciplinary hearing was undoubtedly an agency proceeding at which the Board took on an adversarial role. It follows that the Board acted as both an adjudicator and an advocate at the disciplinary hearing.

Nevertheless, the record reflects that, in its adversarial role, the Board did not take a "position" as to the discipline that should be imposed on Ms. Carpenter's license. At the hearing, counsel for the Board requested only that the Board "issue appropriate discipline in this particular case." No other pleadings or filings in the record indicate that the Board advocated for any particular discipline or the discipline that was subsequently imposed. Rather, the discipline was imposed as part of an administrative decision rendered by the Board in its role as an adjudicator in a contested case.[4] Because the discipline imposed

---

[3] A "contested case" is "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]" Section 536.010(4), RSMo Supp. 2004. Section 621.110 requires an agency to "set the matter for hearing upon the issue of appropriate disciplinary action" upon a finding by the AHC that an individual's license is subject to discipline. Accordingly, disciplinary proceedings before the Board are contested cases.

[4] The dissenting opinion contends that, by concluding the discipline imposed was a decision rendered by the Board in its adjudicative capacity, the statutory right to recover attorney's fees against overreaching agencies will "practically become a thing of the past." As this Court explained in *Garland*, however:

14

was a decision made by the Board and not advocated for by the Board at the disciplinary hearing,[5] it cannot constitute a "position" for purposes of section 536.087.1.[6]

Accordingly, because section 536.087.1 does not apply to the Board's disciplinary order, Ms. Carpenter was not entitled to attorney's fees. This Court will affirm a trial court's judgment "if cognizable under any theory, regardless of whether the reasons advanced by the [circuit] court are wrong or not sufficient." *Rouner v. Wise*, 446 S.W.3d 242, 249 (Mo. banc 2014). This Court is "primarily concerned with the correctness of the [circuit] court's result, not the route taken by the [circuit] court to reach that result." *Id.* (internal quotation omitted). Therefore, despite the fact that the circuit court erroneously

---

> An administrative decision rendered in the role of adjudicator does not constitute a "position" as that term is used throughout section 536.087. The purpose of [section 536.087] is not to ensure the accuracy of the decisions rendered by administrative tribunals. That purpose is served by the constitutional requirement that administrative decisions be subject to judicial review.

455 S.W.3d at 448.

[5] When Ms. Carpenter sought judicial review of the Board's disciplinary order, the Board took the position before the circuit court that the discipline imposed was reasonable and appropriate. This Court's recent opinion in *Missouri Real Estate Appraisers Commission v. Funk*, 492 S.W.3d 586, 596-97 (Mo. banc 2016), however, makes clear that it is the position taken in the agency proceeding, not on judicial review, that is reviewed for purposes of an award of attorney's fees pursuant to section 536.087.

[6] The dissenting opinion asserts that Ms. Carpenter is entitled to attorney's fees because the Board took a "position" by advocating that discipline be imposed on Ms. Carpenter's nursing license. Even if the Board took a "position" for purposes of section 536.087 by seeking discipline of Ms. Carpenter's license, Ms. Carpenter is entitled to attorney's fees only if the agency's position was not "substantially justified." *See* section 536.087.1. The dissenting opinion fails to explain how the position that Ms. Carpenter's license should be disciplined was not substantially justified under the facts and circumstances of this case.

15

determined that Ms. Carpenter was not a prevailing party, it did not err in overruling Ms. Carpenter motion for attorney's fees pursuant to section 536.087.1.

### Conclusion

Ms. Carpenter was a "prevailing party" under the language of sections 536.087 and 536.085 because she prevailed on her claim before the circuit court that the Board's disciplinary order was unreasonable, arbitrary and capricious. Ms. Carpenter, however, is not entitled to attorney's fees under section 536.087.1 because the Board did not take a position as to the discipline to be imposed on Ms. Carpenter's license. The judgment of the circuit court is affirmed.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE

Fischer, Stith, Wilson and
Russell, JJ., concur; Draper, J.,
dissents in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

KAREN CARPENTER, )
)
               Appellant, )
)
v. )   No. SC95482
)
)
STATE BOARD OF NURSING, )
)
               Respondent. )

## DISSSENTING OPINION

I respectfully dissent. The principal opinion holds that Karen Carpenter (hereinafter, "Ms. Carpenter") is ineligible for attorney's fees because the discipline imposed by the State Board of Nursing (hereinafter, "the Board") was a purely adjudicatory "decision" that cannot constitute a "position" advocated for by the Board at the disciplinary hearing. The principal opinion acknowledges that the Board assumed an active adversarial role and sought to discipline Ms. Carpenter's license. The principal opinion, however, concludes that the Board managed to advocate for no "position" whatsoever by declining to request a specific sanction. The net result is that administrative agencies can now run roughshod over Missouri citizens and avoid liability for attorney's fees by simply instructing agency attorneys to remain coy regarding the

preferred sanction while, at the same time, the agency zealously litigates the case against its target.

The principal opinion's rationale begins with distinction drawn in *Garland v. Ruhl,* 445 S.W.3d 442 (Mo. banc 2015), between an agency "position" and an agency "decision." In *Garland*, this Court held that that there was no "agency proceeding" in which attorney's fees could be awarded because the Family Support Division (hereinafter, "FSD") was not a party to the underlying child support dispute, was not represented by counsel, and acted solely as the adjudicator. *Id*. at 448. Although *Garland* held that attorney's fees were unavailable because there was no "agency proceeding," this Court went on to discuss the general distinction between an agency "decision" and an agency "position" asserted during an agency proceeding. This Court observed that attorney's fees may be awarded when a party successfully challenges an agency's litigation "position," but fees cannot be awarded when a party successfully challenges an agency's adjudicatory "decision." *Id*.

Drawing a bright-line distinction between an agency's litigation "position" and an agency's "decision" makes sense when, as in *Garland*, the agency at issue assumes a non-adversarial, purely adjudicatory role. In *Garland,* it was impossible for FSD to take a litigation "position" because FSD was not a party to any "agency proceeding." *Id.* Instead, FSD acted solely as an adjudicator whose only responsibility was to make a "decision." Thus, the distinction drawn in *Garland* between an agency "position" and an agency "decision" does nothing more than reflect the necessary truth that a purely

2

adjudicative entity by definition takes no "position" and can do nothing more than render a "decision."[1]

The principal opinion imports the *Garland* distinction from its narrow, fact-specific origins and applies it to the fundamentally different facts of this case. Unlike *Garland*, this case involves an adversarial agency proceeding in which, as the principal opinion acknowledges, the Board "took an active role at the disciplinary hearing by presenting evidence, cross-examining witnesses and making opening and closing arguments to the Board." The Board's "active role" was not happenstance. Unlike the purely adjudicatory roles of the agencies in *Garland* and *Perry*, the Board is statutorily obligated to both adopt and enforce nursing regulations Section 335.036. As this case illustrates, the Board's statutory obligation to enforce nursing regulations requires the Board both to prosecute alleged offenders and to determine the appropriate discipline. Therefore, as a matter of law, the Board in this case *cannot* operate in a purely

---

[1] The limited application of the *Garland* distinction is not only dictated by the facts of the case, but it also is confirmed by the sole authority cited to support the distinction between agency positions and agency decisions. *Garland* cited *In re Stephen C. Perry*, 882 F.2d 534, 540 (1st Cir.1989), for the proposition that an administrative adjudicator cannot be liable for attorney's fees if its adjudicatory decision is incorrect. In *Perry*, the agency at issue was a "purely adjudicative entity" that had "no stake in the outcome of the litigation." *Id*. at 536. The *Perry* court emphasized that the agency at issue "differs from the conventional agency model in that it is purely an adjudicator; there is no intermixing of regulatory, prosecutorial, and adjudicative functions." *Id.* at 537. As a purely adjudicative entity, the agency "by definition" could not take a litigation position. *Id* at 543. Thus, *Perry* held that the attorney's fees provisions of the federal Equal Access to Justice Act did not apply to "purely adjudicative entities." *Id*. at 545. The facts of *Garland*, and its reliance on *Perry*, demonstrate that the general distinction between an agency "decision" and an agency "position" is inapplicable to a case in which the agency is both an advocate and adjudicator and, by definition, has a stake in the outcome of the litigation.

3

adjudicatory role. The distinction drawn in *Garland* between an agency "position" and an agency "decision" is irrelevant to this case.

The principal opinion's reliance on *Garland* is not only unwarranted by the actual facts and holding in *Garland*, it also overlooks the fact that legal rights are altered by an agency's "decision" and not by an agency's litigation "position." Therefore, it will *always* be the case that an aggrieved party, such as Ms. Carpenter, will be seeking relief from the agency's decision. If, as the principal opinion reasons, an agency "decision" in an adversarial agency proceeding is wholly independent of the agency's "position" so long as the agency's attorney declines to request a specific sanction, then the statutory right to recover attorney's fees for successfully fending off abusive agency overreach is practically a thing of the past. This unnecessary result can be avoided by simply recognizing that the bright-line distinction drawn in *Garland* between an agency "position" and an agency "decision" stemmed from the unique position of the agency in that case as a pure adjudicator. Rather than holding that the Board is an advocate without a position, the more reasonable conclusion is to recognize that the Board, in its advocacy role, took a "position" by advocating that the Board, in its adjudicatory role, enter a "decision" imposing discipline on Ms. Carpenter's license. This conclusion is reflected in the plain language of section 536.087, RSMo 2000,[2] and is confirmed by the Board's admission that it took a position by advocating for discipline to be imposed on Ms. Carpenter's license.

---

[2] All further statutory references are to RSMo 2000.

Section 536.087 does not refer to the agency's "positions." The statute refers to the singular "position" of the agency. The principal opinion ignores the Board's overall, singular "position" that Ms. Carpenter's license should be disciplined and, instead, focuses on the fact the Board's attorney never requested a specific sanction at the disciplinary hearing. The implication is that courts must sift through the agency's overall, singular "position" to determine whether the agency specifically advocated for the specific sanction that the agency ultimately imposed. This rationale confuses the specific arguments or assertions advanced by an agency with the agency's overall "position." For this reason, federal courts have recognized, in the context of analyzing the justification for an agency's position under the analogous federal Equal Access to Justice Act, that the agency's "position" is assessed by reviewing the "overall objectives of the government" rather than focusing on the "specific, isolated issues" in the case. *See Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139-40 (4th Cir. 1993) (defining the agency's position by noting that the "overall position of the Army Corps of Engineers was its decision to grant a permit for construction of a pipeline"). "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Commissioner, INS v. Jean,* 496 U.S. 154, 161-62 (1990). The principal opinion ignores the fact that the Board's singular overall "position" was to discipline Ms. Carpenter's nursing license and, instead, focuses on the Board's decision to remain coy about the preferred sanction even as it took an "active role" in advocating for

5

discipline. What is left is the incongruous conclusion that the Board took an "active role" in advocating for nothing.

Any doubt as to the Board's "position" is removed by the fact that the Board admitted that its "position" during the AHC hearing was that Ms. Carpenter's license was subject to discipline. To avoid the consequences of this admission, the Board now argues that it took no "position" at the disciplinary hearing because it was acting solely as an adjudicator. Section 621.145, however, requires this Court to treat the AHC hearing and the Board's disciplinary hearing as a single administrative proceeding. Thus, the Board's admission that its effort to discipline Ms. Carpenter's license during the AHC hearing constituted a "position" is equally applicable to the disciplinary hearing in which the Board's attorney took an "active role" in advocating the Board's position that Ms. Carpenter's license should be disciplined. Rather than concluding that the Board took an "active role" in advocating no position whatsoever, I would hold the Board to its admission.

The judgment should be reversed. As the principal opinion correctly concludes, Ms. Carpenter was a prevailing party. As the circuit court determined, the particulars of the Board's disciplinary order were excessive and unreasonable. By reducing the term of her probation and setting aside some of the conditions of that probation, Ms. Carpenter

6

prevailed, in part, against the Board's overall "position" that her license should be disciplined. In short, Ms. Carpenter is entitled to recover her attorney's fees pursuant to section 536.087.

_____
George W. Draper III, Judge